UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-00719-H

GERALD W. DEOM and DEOM HEALTH
ENTERPRISES, INC.,                                                              PLAINTIFFS

V.

WALGREEN CO.                                                                   DEFENDANT

**MEMORANDUM OPINION AND ORDER**

The matter before the Court is Defendant, Walgreen Co.'s motion to dismiss all claims asserted by Plaintiffs, Gerald W. Deom and Deom Health Enterprises, Inc. ("DHE") pursuant to Federal Rule of Civil Procedure 12(b)(6).   For the following reasons, the Court will sustain in part and deny in part Defendant's motion.

I.

For some time, Deom, through DHE, owned and operated three pharmacies in the Radcliff, Kentucky area.  After a lengthy career, Deom decided to retire and sell the assets of the DHE pharmacies.  Enter Defendant, a national corporation engaged in the retail pharmacy business.

In September 2011, the parties negotiated and signed the Asset Purchase Agreement ("APA") wherein Defendant agreed to purchase, *inter alia*, the stock, pharmaceutical inventory, and prescription files belonging to DHE.  The purchase price consisted of $3,500,000 at closing, plus the potential for earnout payments up to $800,000.  The parties do not refute that Defendant in fact paid $3.5 million at closing in

1

accordance with the APA. This dispute centers on the possible earnout payments detailed in the APA's Prescription Earnout Provision ("PEP").

The PEP provided that Defendant would pay an additional sum of money, between $600,000 and $800,000, if, in the nine-month period following the closing date, the average number of daily prescriptions ("Average Customer Prescriptions") filled by Defendant at the three pharmacies was equal to or greater than 308. If the figure was less than 308, Defendant had no contractual obligation to pay anything beyond the $3.5 million at closing. The APA provided a formula to calculate the Average Customer Prescriptions: Defendant was to identify through its computer system the total number of prescriptions filled during the payout period, and then divide that number by the total number of days in the payout period.

Following the closing date, Defendant's sale performance apparently failed to live up to expectations. Plaintiffs allege that a large number of customers transferred their prescriptions to other pharmacies due to Defendant's mismanagement. Specifically, Plaintiffs aver that the long waiting times to fill prescriptions, unhelpful staff and lack of preparedness, drove customers away.

On September 27, 2012, Defendant sent notice to Deom informing him that it had reviewed the applicable data for the earnout period, and had concluded that it failed to reach the minimum PEP target, 308. As such, Defendant stated that, pursuant to the PEP, it did not owe anything to Plaintiffs.

Plaintiffs then filed the following claims against Defendant: breach of contract, breach of the implied covenant of good faith and fair dealing, and equitable estoppel.

Plaintiffs ask the Court for compensatory and punitive damages,[1] and an order requiring Defendant to account in full for its determination that no sums are due to Plaintiffs under the PEP.  Defendant has moved to dismiss all claims.

To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The Court must view the allegations in the complaint in the light most favorable to the Plaintiffs, treating all well-pleaded facts as true, but need not accept bare legal conclusions as definitive.  *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).

The APA contains a choice of law provision requiring that all matters relating to the construction, validity, performance and enforcement of the APA be governed by and construed pursuant to Illinois law.  ECF No. 1-1.

## II.

As to their breach of contract claim, Plaintiffs proceed with two alternative theories of liability: 1) Defendant did not meet the PEP targets because it failed to use reasonable efforts to retain Plaintiffs' former customers, or 2) Defendant in fact met the PEP targets and therefore breached the APA by advising Plaintiffs that it did not.  The Court will address each theory individually.

---

[1] Plaintiffs have since consented to the withdrawal of their request for punitive damages.  ECF No. 7.

A.

In its Complaint, Plaintiffs allege that Defendant breached the APA by failing to meet the explicit prescription targets set forth in the PEP.   However, the plain language of the APA did not affirmatively obligate Defendant to meet the prescription targets. Additionally, the APA did not provide any condition that could be implicated if Defendant failed to meet the prescription targets.  The Court finds no need to negate the clear terms of the APA, and as such, Plaintiffs' express breach of contract claim fails.

Plaintiffs argue that the extra-contractual implied duty of good faith and fair dealing obligated Defendant to maintain or increase prescription sales so as to meet the prescription targets.[2]  Specifically, Plaintiffs contend that Defendant had a duty to use its reasonable best efforts to retain a sufficient customer volume so as to trigger a payment obligation under the PEP.

Absent an express disavowal, Illinois law implies a covenant of good faith and fair dealing in every contract.  *Kipris v. Mendel Metals, Inc.*, 741 N.E.2d 1033, 1038 (Ill. Ct. App. 2000).  The Illinois Supreme Court noted that "'[t]his principle ensures that parties do not try to take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or to do anything that will destroy the other party's right to receive the benefit of the contract." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 903 (Ill. 1996).  However, the covenant of good faith and fair dealing does not permit courts to override the clear terms of the contract or to read an obligation

---

[2] Plaintiffs' devote a separate count of its complaint on the allegation that Defendant violated the implied covenant of good faith and fair dealing.  However, in Illinois, a lack of good faith and fair dealing does not by itself create a distinct cause of action.  *See Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992)("[U]nder Illinois law, the covenant of good faith and fair dealing has never been an independent source of duties for the parties to a contract.").  Rather, the implied duty of good faith and fair dealing collapses into a breach of contract claim and is used as a guide for the construction of explicit terms in an agreement.  *Id.*

into a contract that does not exist.  *See Resolution Trust Corp. v. Holtzman*, 618 N.E.2d 418, 424 (Ill. Ct. App. 1993); *Bank One, Springfield v. Roscetti*, 723 N.E.2d 755, 764 (Ill. Ct. App. 1999).

Generally, the implied covenant of good faith and fair dealing is implicated where one party to a contract is given broad discretion in performance of its contractual duties. *Perez v. Citicorp Mortg., Inc.*, 703 N.E.2d 518, 525 (lll. Ct. App. 1998).  In such a circumstance, "a plaintiff must plead [the] existence of contractual discretion." *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E.2d 911, 917 (Ill. App. Ct. 2004)(citing *N. Trust Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095 (1995)).  Where no contractual discretion is present, "the good-faith duty to exercise contractual discretion reasonably does not apply." *Id.* (citing *Roscetti*, 723 N.E.2d at 764).  Where a party is vested with contractual discretion, it must do so "reasonably and with proper motive, not arbitrarily, capriciously, or in a manner that is inconsistent with the reasonable expectations of the parties." *Resolution Trust*, 618 N.E.2d at 424.

Plaintiffs maintain that reaching the PEP targets was a matter within the sole discretion and control of Defendant and that Defendant's failure to retain sufficient customer volume to trigger the PEP breached the implied covenant of good faith and fair dealing.  The Court finds this position unpersuasive for two reasons.  First, the number of prescriptions filled during the earnout period was not a figure exclusively dictated by Defendant's operations.  The decline in sales could be attributed to a number of factors outside the control of Defendant, such as a customer's preference to support local pharmacies or customers moving out of the area.  Second, Plaintiffs have failed to identify any provision of the APA that vested Defendant with the type of contractual

discretion needed to support a breach of contract based on a breach of the implied covenant of good faith and fair dealing. There is nothing in the APA from which it could be inferred that Defendant was obligated to meet the PEP targets or undertake actions that would maximize the total number of prescriptions filled. Both parties clearly expected to benefit from this transaction, and the Court fails to discern any bad faith on the part of Defendant to subvert Plaintiffs' chance of receiving a prescription earnout payment.

Before executing the APA, Plaintiffs could have insisted that it contain specific contractual commitments from Defendant regarding its business operations and prescription sales. Or, more generally, Plaintiffs could have required that Defendant use its best efforts to retain sufficient customer volume. However, no such provisions appear and the Court is without a justification to rewrite the APA and impose such an implied obligation. As Judge Learned Hand posits, "in commercial transactions it does not in the end promote justice to seek strained interpretations in aid of those who do not protect themselves." *James Baird Co. v. Gimbel Bros., Inc.*, 64 F.2d 344, 346 (2d Cir. 1933).

In sum, Defendant's alleged failure to meet the PEP targets does not amount to a breach of the APA or a breach of the implied duty of good faith and fair dealing. The clear, express provisions of the APA did not obligate Defendant to meet the targets or to take any particular actions. Accordingly, the Court will grant Defendant's motion to dismiss the breach of contract claim based on the theory that Defendant improperly failed to meet the prescription targets.

B.

6

In the alternative, Plaintiffs argue that Defendant may have breached the APA if it actually met the proscribed PEP targets, but falsely advised Deom that it did not. Defendant has not provided any documentation to Plaintiffs to support its claim that the Average Customer Prescriptions' calculation was less than 308.   Since Defendant has exclusive control of the data with respect to the volume of prescriptions filled during the earnout period, Plaintiffs are unable to confirm that Defendant indeed failed to meet the minimum prescription target.

Defendant maintains that Plaintiffs waived the right to challenge its calculation of the Average Customer Prescriptions.  To support this contention, Defendant points to a part of the PEP, which provides, "[Defendant's] calculation of the Average Customer Prescriptions shall be conclusive." ECF No. 1-1.  Defendant argues that to ask for an accounting of the Average Customer Prescriptions filled during the earnout period is really to challenge it, a right Plaintiffs expressly waived.  The Court disagrees.

As stated above, the APA sets forth a formula to determine the Average Customer Prescriptions.  This number is reached by dividing the total number of prescriptions filled at the three Walgreen pharmacies during the earnout period by the total number of days in the earnout period.   Plaintiffs have waived the right to challenge Defendant's arithmetic in calculating this figure.  Notwithstanding, the APA does not direct or permit Defendant to withhold from Plaintiffs the numbers used in the calculation.

Plaintiffs can easily determine the denominator used in the computation.  The same cannot be said for the numerator, the total number of prescriptions filled by Defendant in the earnout period, as that figure is within the exclusive possession of Defendant.  The PEP provides that on or about the nine-month anniversary of the closing,

7

Defendant would "*identify*, though its pharmacy computer system, the total number of prescriptions filled" during the nine-month earnout period.  ECF No. 1-1 (emphasis added).  A reasonable interpretation of that clause indicates that Defendant is obligated to, at the very least, identify that number for the Plaintiffs.[3]  *See* BLACK'S LAW DICTIONARY (9th ed. 2009)(defining identify as "prov[ing] the identity of (a person or thing)").

It is plausible from the facts that Defendant may have breached the APA by failing to pay an earnout payment due under the PEP.  It may very well be that Defendant will produce numbers used in its calculation that are accurate and true.  However, the chance that it did not use proper figures in its calculation precludes dismissal of this cause of action.  The Court will allow Defendant sixty days to respond to Plaintiffs' limited discovery request concerning the total number of prescriptions filled during the payout period and an accounting thereof.

III.

Plaintiffs' complaint also advances an equitable estoppel claim, alleging that they entered the APA in reliance on Defendant's representations that it would incorporate DHE's customer base into its own for the mutual benefit of the parties, and in such a manner as to maximize the benefits of the transaction.  Illinois law holds that

> [t]o establish equitable estoppel, the party claiming estoppel must demonstrate that (1) the other person misrepresented or concealed material facts, (2) the other person knew at the time he or she made the representations that they were untrue, (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon, (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations, (5) the party claiming estoppel reasonably relied upon the representations on good faith to

---

[3] At this early juncture, the Court declines to declare this particular provision ambiguous.

> his or her detriment, and (6) the party claiming estoppel would be
> prejudiced by his or her reliance on the misrepresentations if the
> other person is permitted to deny the truth thereof.

*Rothers Const., Inc. v. Centurion Indus., Inc.*, 786 N.E.2d 644, 652-53 (Ill. Ct. App. 2003)(citing *Geddes v. Mill Creek Country Club, Inc.*, 751 N.E.2d 1150, 1157 (Ill. 2001).[4]

At the pleadings stage, a plaintiff is not required to affirmatively prove the elements of a claim to withstand dismissal. Rather, to survive a motion to dismiss, a plaintiff must proffer factual allegations that raise a right to relief above a speculative level, and that state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 555, 570. Here, Plaintiffs have failed to allege sufficient facts to maintain a claim for equitable estoppel. For one, they do not allege that Defendant knowingly misrepresented or concealed any material fact. Plaintiffs only allege that Defendant failed to comply with its representations concerning its ability to provide appropriate service to DHE's customers in the period following closing. The APA is replete with such a representation, and given the APA's integration clause, the parol evidence rule would likely bar the introduction of any extra-contractual evidence to support that argument. Moreover, the alleged representations pertain to future events, which cannot be the basis of an estoppel claim under Illinois or Kentucky law. *See Gilliland v. Allstate Ins. Co.*, 388 N.E.2d 68, 71 (Ill. Ct. App. 1979)("To invoke the doctrine of estoppel, a false representation must generally relate to an existing or past event, not to a promise concerning a future happening."); *Lena Petroleum, Inc. v. Kennedy*, 2009 WL 723044, *9

---

[4] The equitable estoppel claim is extra-contractual, and as such, the choice of law provision mandating the application of Illinois law may not be implicated. Notwithstanding, Kentucky law mirrors Illinois law with respect to the elements of an equitable estoppel claim, and Plaintiffs' claim would meet the same fate under either common law. *See Hitachi Auto. Prods. USA, Inc. v. Craig*, 279 S.W.3d 123, 126 (Ky. 2008).

9

(Ky. Ct. App. Mar. 20, 2009)("Equitable estoppel generally requires a misrepresentation to a past or existing fact.").  As such, Plaintiffs' equitable estoppel claim merits dismissal as a matter of law.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion to dismiss is SUSTAINED IN PART and DENIED IN PART and the following claims are dismissed: 1) breach of contract based on Defendant's alleged failure to maintain sufficient customer volumes; 2) breach of the implied duty of good faith and fair dealing; and 3) equitable estoppel.

What remains is Plaintiffs' breach of contract claim based on the allegation that Defendant met the Prescription Earnout Provision's targets but falsely advised Deom that it did not.

IT IS FURTHER ORDERED that Plaintiff is permitted limited discovery to require Defendant to account in full for its determination that no sums are due pursuant to the Prescription Earnout Provision.  Defendant is given **thirty (30) days** to respond to a limited discovery request by Plaintiffs regarding this specific issue.

cc:     Counsel of Record