UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-719-H

GERALD W. DEOM
and DEOM HEALTH ENTERPRISES, INC.                                               PLAINTIFFS

v.

WALGREEN CO.                                                                                         DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant's renewed Motion for Summary Judgment. Plaintiffs have requested the Court withhold judgment pending Defendant's full and complete responses to certain discovery Deom has already tendered, as well as the deposition testimony of the author or custodian of the document upon which Defendant rests its motion. For a variety of reasons, final resolution of this case, which once initially seemed quite straightforward, has been delayed. Hopefully, the Court's decisions here will move matters forward.

I.

First, a quick review of how we arrived at this point.

In September 2011, the parties negotiated an Asset Purchase Agreement ("APA") under which Defendant agreed to purchase certain assets of three pharmacies operated by Deom (the "Pharmacies"). The purchase price reflected the value of Deom's "Records,"[1] separate covenants not to compete for each location, and the value of certain inventory. The parties agreed that a

---

[1] The APA defines this term as "[a]ny and all prescriptions, prescription files and records, customer lists, and patient profiles, including…any files or records maintained electronically…and any files or records added between the date of this Agreement and the date of transfer." ECF No. 1-1, Ex. A, p. 1, 4.

small percentage of the overall purchase price would be based on a "Prescription Earnout" measure. Payment under this provision was contingent on Defendant's filling a target daily average of prescriptions measured over a nine-month period. At the end of the measurement period, Defendant notified Plaintiffs that the Prescription Earnout provision's target of 308 was unmet. Defendant did not support its announcement with any documentation.

Subsequently, Plaintiffs filed a complaint against Defendant alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and equitable estoppel. Quite promptly, Defendant moved to dismiss the claims. On April 19, 2013, the Court issued a Memorandum Opinion which dismissed all Plaintiffs' claims except for a specific aspect of their breach of contract claim.[2] The parties did not argue the contract interpretation issue in detail because they appeared to agree upon it. The Court also allowed Plaintiffs to request limited discovery concerning "the total number of prescriptions filled during the payout period *and an accounting thereof.*" *Id.* (emphasis added). Unfortunately, this did not resolve matters.

Defendant answered only one of Plaintiffs' three propounded interrogatories. In answer to Plaintiffs' request to "state the number of prescriptions that Walgreen's alleges that it retained at the conclusion of the Prescription Earnout Termination Date," Defendant attached a chart, which purports to show that the average total prescriptions filled per day over the nine-month period after closing was 208—well under the target of 308 which would have triggered an additional payment to Plaintiffs.

After answering this interrogatory, Defendant promptly moved for summary judgment on the grounds that Plaintiffs had not met the sole benchmark for triggering a payment obligation under the Prescription Earnout provision. However, it turns out that Defendant's express

---

[2] The breach of contract claim that remains is based on the theory that the target Prescription Earnout amount was, in fact, met, but Defendant has wrongfully represented otherwise. The Court dismissed Plaintiffs' breach of contract claim based on Defendant's alleged duty to take reasonable measures to retain Deom's former customers.

assertion of what the chart represented[3] was incorrect: the doors closed to the three pharmacies prior to closing on the APA.

At a conference on August 29, 2013, Plaintiffs appear to have reconsidered their own view of the contract interpretation, arguing the plain language of the APA requires that Deom be given credit for prescriptions filled for former Deom customers at any Walgreen pharmacy in the United States. At the hearing, Defendant opposed Deom's reading of the APA language and represented that the chart was not calculated using that interpretation.

## II.

After the Court cleared away some of the underbrush of this case, the parties have focused more intently upon the APA's actual language. It now appears that the parties disagree about the formula used to calculate the Average Customer Prescriptions under the Prescription Earnout provision. Consequently, the Court has reviewed the APA to determine whether the "Prescription Earnout" calculation is based on the daily average prescriptions for Plaintiffs' former customers (1) purchased at any Walgreen's pharmacy or (2) only those prescriptions purchased at Walgreen's Dixie Boulevard store location.[4]

Article 4.2(b) of the APA states that for purposes of determining any Prescription Earnout, Defendant shall identify the "total number of prescriptions filled at Walgreens drug stores for patients of the Pharmacy since the closing date." The term "Pharmacies" is defined on page 1 of the APA as the three drug stores subject to the APA. That definition applies in the

---

[3] In its memorandum supporting summary judgment, Defendant wrote, "Indeed, the chart attached to Walgreen's discovery responses—which contain the precise figures used to calculate the Average Customer Prescriptions—clearly demonstrates that the sole benchmark for triggering a payment obligation under the [Prescription Earnout provision]—an average number of daily prescriptions *filled at the acquired pharmacies during the nine-month earnout period* equal to or greater than 308—was not met." ECF No. 20-1, p. 4 (emphasis added).

[4] This is the particular Walgreen's location situated within a 5 mile radius of each of Deom's three pharmacies. The APA required Deom to deliver all tangible items related to the records to this location upon closing and authorized Deom (and Walgreen) to post signage on the three closed pharmacies directing former customers to this location. *See, e.g.*, APA 1.4, 6.2.

singular form as well. The term "Walgreens drug stores" is not limited or otherwise defined.[5] By its terms, it means any Walgreen drug store. Therefore, after careful reading, the Court concludes that the plain contractual language provides that the Prescription Earnout is determined by the daily average prescriptions that Plaintiffs' customers purchased at any Walgreen's store.

The plain language also comports with reality. Plaintiffs' former stores appear to have closed shortly after the APA was executed. The parties were aware of this. Presumably, the parties anticipated and hoped that Plaintiffs' former customers would transfer their business to other Walgreen stores. That is the reason Defendant paid a substantial price for Plaintiffs' goodwill and records. The Prescription Earnout was designed to compensate Plaintiffs for any "up-side" loyalty of their customers. Calculating that earnout based on the daily average purchases of former customers at any Walgreen store is the only sensible interpretation.

III.

Finally, the Court must address Plaintiffs' request for some assurance that Defendant's prescription chart is valid. Plaintiffs' concerns are understandable. In its most recent briefing, Defendant did an about-face, explaining it was mistaken about the manner in which it calculated the Average Customer Prescriptions and that the chart does, in fact, include credit for all prescriptions filled for Deom's former customers at any Walgreen pharmacy in the United States for the Prescription Earnout period. ECF No. 30, p. 2, n.4. Given these unusual circumstances and the considerable confusion which the chart itself creates, Plaintiffs are entitled to a first-hand explanation.

---

[5] In contrast, APA § 1.4 defines "the 'Walgreens Location'" to mean the 635 Dixie Boulevard location in Radcliffe, Kentucky, but this term only instructs where Deom was to deliver tangible purchased assets. The provision at issue, APA § 4.2(b), references "the total number of prescriptions filled at Walgreens drug stores…." APA § 1.4 does not apply to this provision.

The Court will allow Plaintiffs to depose the author or custodian of the chart in order to verify the method of its preparation and the validity of the underlying data.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that Plaintiffs are permitted discovery described above over the next sixty (60) days, after which time the parties shall resolve their dispute or alert the Court to schedule another conference.

cc:    Counsel of Record